# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

LORI BRISBOIS,                                    Case No. 15-CV-0570 (PJS/TNL)

          Plaintiff,

v.                                                              ORDER

SOO LINE RAILROAD COMPANY
d/b/a CANADIAN PACIFIC,

          Defendant.

---

Jason Hungerford, NICHOLS KASTER, PLLP, for plaintiff.

Tracey Holmes Donesky & Matthew Tews, STINSON LEONARD STREET LLP, for defendant.

Plaintiff Lori Brisbois brought this action against her employer, defendant Soo Line Railroad Company d/b/a Canadian Pacific ("CP"), alleging that CP violated the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109, when it retaliated against her in various ways after she raised safety concerns. This matter is before the Court on CP's motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. For the reasons that follow, CP's motion is granted in part and denied in part.

# I. BACKGROUND

Brisbois has been employed by CP since April 2006 as a laborer, track inspector, and foreman.  Compl. ¶ 2.  Brisbois is a member of the Brotherhood of Maintenance of Way Employes Division ("the Union").  *Id.*  A collective bargaining agreement ("CBA") between the Union and CP governs the terms and conditions of Brisbois's employment.

On July 12, 2012, Brisbois was working as the foreman of a crew at CP's rail yard in St. Paul, Minnesota.  *Id.* ¶ 6.  Her crew was working on two tracks, both of which were "protected"—that is, configured so that a train could not come onto the tracks while the crew was working.  *See id.* ¶¶ 8, 10, 11.  The adjacent tracks, however, were "live"—that is, not protected.  *See id.* ¶¶ 9, 11.

After being briefed regarding the hazards at the St. Paul yard that day, Ken Heath, a supervisor, gave permission to several of Brisbois's crew members to walk on the adjacent live tracks "as long as they were careful."  *Id.* ¶¶ 12, 14.  Brisbois saw at least one crew member walking on one of the live tracks.  *Id.* ¶ 15.  She immediately secured protection for the track and then confronted Heath about her safety concerns.  *Id.* ¶¶ 16, 17.  Heath "accused [Brisbois] of being argumentative and sent her home."  *Id.* ¶ 18.

Brisbois was then charged with "being quarrelsome and not following instructions," in violation of CP's rules.  *Id.* ¶ 19.  On August 30, 2012, after a

disciplinary hearing (also called an "investigation hearing"), CP found that Brisbois had violated its rules and disciplined her by suspending her for five days and restricting her seniority as a foreman for one year. *Id.* ¶ 23. Brisbois alleges that CP also denied her pay and mileage reimbursements to which she was entitled for attending the disciplinary hearing. *Id.* ¶ 25. Brisbois also alleges that in the ensuing months CP denied her "several assistant foreman and related positions that she was qualified for." *Id.* ¶ 24.

On October 18, 2012, Brisbois's car was damaged while she was at work. *See id.* ¶ 26. The car was parked "in a parking area with limited access and no real reason for non-railroad employees to be."[1] *Id.*

On January 11, 2013, Brisbois called the Occupational Safety and Health Administration ("OSHA") to make a complaint against CP for retaliating against her after she raised safety concerns. *See id.* ¶ 27. She spoke with an OSHA investigator on January 18, 2013.

Brisbois alleges that, from April 2 to April 4, 2013, CP "refused to permit [her] to return to work" after a brief medical absence, even though she had been medically cleared to return. *See id.* ¶ 28. Brisbois also alleges that after she contacted OSHA, CP

_____

[1]It appears from materials outside of the pleadings that Brisbois's car was damaged in Kenosha, Wisconsin—approximately 350 miles from St. Paul—while she was working under a different manager. *See* LeDuc Decl. [ECF No. 17].

"subjected [her] to additional allegations of rule violations" and conducted a disciplinary hearing on those allegations, "further denied [her] meal and other reimbursements," and "continued to deny [her] assistant foreman and related positions." *Id.* ¶¶ 29-31.

As noted, Brisbois contacted OSHA in January 2013 to complain of CP's alleged retaliation. The OSHA investigator to whom she spoke mistakenly told her that her complaint appeared to be untimely. *Id.* ¶ 32. Brisbois alleges that she nevertheless wanted to pursue her complaint, but the OSHA investigator mistakenly concluded that she wanted to drop the matter. *Id.* OSHA confirmed its (mistaken) conclusion in a letter to Brisbois on January 18, 2013. *Id.* The letter stated that, because Bribois did not want to pursue her compliant, "OSHA was taking no further action regarding [Brisbois]'s allegations." *Id.* Brisbois appealed this letter to an Administrative Law Judge ("ALJ"). *Id.* ¶ 33. The ALJ dismissed her appeal without prejudice because an initial OSHA investigation—a prerequisite to a hearing before an ALJ—had not been conducted. *Id.* ¶ 34. Brisbois then filed an "Amended Complaint" with OSHA on April 15, 2013; this document was, in fact, her first *written* complaint. *Id.* ¶ 35.

The Amended Complaint included six allegations of retaliation. Brisbois alleged that CP retaliated against her (1) when CP suspended her for five days and restricted her seniority for one year; (2) when CP did not pay her or reimburse her mileage when

she attended the disciplinary hearing; (3) when "agents" of CP damaged her car; (4) when CP refused to allow her to return to work for three days in April 2013; (5) when CP "initiate[d] a disciplinary investigation" against her on unrelated charges; and (6) when CP denied her "a per diem meal allow[an]ce of $25.75." ECF No. 22-6 at 3-4. On September 10, 2013, OSHA issued its findings, concluding that "there is no reasonable cause to believe" that Brisbois "was discriminated against in reprisal for raising safety concerns." *See* ECF No. 22-5 at 2.

On January 29, 2015, Brisbois notified the ALJ of her intent to terminate the administrative proceedings and litigate instead in federal court. Compl. ¶ 36; *see* 49 U.S.C. § 20109(d)(3). Brisbois then filed this action alleging that CP retaliated against her for raising safety concerns to Heath on July 12, 2012, Compl. ¶ 43, and for complaining to OSHA in January 2013, *see id.* ¶ 45.[2]

## II. ANALYSIS

The FRSA prohibits rail carriers from retaliating against employees who engage in protected activity, which includes reporting a safety concern to a rail carrier and complaining of retaliation to OSHA. *See* 49 U.S.C. § 20109(a)-(b). Brisbois alleges that

---

[2]At the beginning of her complaint, Brisbois says that she is making claims for both retaliation and discrimination. Compl. ¶ 1. But the allegations in her complaint and the arguments in her brief were focused entirely on retaliation; no mention is made of discrimination. If Brisbois intends to bring a separate claim for discrimination, her claim has not been sufficiently pleaded.

CP retaliated against her in violation of the FRSA on eight occasions:  (1) when CP suspended her for five days and restricted her seniority for one year; (2) when CP denied her "several assistant foreman and related positions;" (3) when CP denied her pay and mileage reimbursements for attending the disciplinary hearing; (4) when "agents of [CP] damaged [her] car;" (5) when CP refused to let her return to work for three days in April 2013; (6) when "CP subjected [her] to additional allegations of rule violations, and conducted an investigation related to the additional allegations;" (7) when CP "denied [her] meal and other reimbursements;" and (8) when CP "continued to deny [her] assistant foreman and related positions" after she contacted OSHA.  Compl. ¶¶ 44, 46.

CP brought this motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction and under Rule 12(b)(6) for failure to state a claim.  CP argues that the Court lacks jurisdiction because Brisbois's claims are subject to mandatory arbitration.  CP further argues that Brisbois's claims otherwise fail because her complaint to OSHA was not timely, she did not exhaust her administrative remedies, and her claims were insufficiently pleaded.

*A.  Standard of Review*

In ruling on a motion to dismiss for lack of subject-matter jurisdiction, a court is free to weigh the evidence and decide whether that evidence establishes that it has jurisdiction.  *See Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990).  In reviewing a motion to dismiss for failure to state a claim, a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *See Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008).  Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must "state a claim to relief that is plausible on its face."  *Id.* at 570.  In assessing the sufficiency of the complaint, a court may disregard legal conclusions that are couched as factual allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Ordinarily, if the parties present, and the court considers, matters outside of the pleadings, a Rule 12(b)(6) motion must be treated as a motion for summary judgment.  Fed. R. Civ. P. 12(d).  But the court may consider exhibits attached to the complaint and documents that are necessarily embraced by the complaint without converting the motion into one for summary judgment.  *See Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

*B. Subject-Matter Jurisdiction*

CP argues that the Court lacks subject-matter jurisdiction over Brisbois's claims

because her claims are governed by the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 et

seq. In order "to promote stability in labor-management relations," the RLA mandates

that certain disputes between rail carriers and their employees be arbitrated, not

litigated. *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994). If a claim

"requires the interpretation of a [CBA]," then the RLA's mandatory arbitration

provisions apply and the court lacks subject-matter jurisdiction. *Evermann v. BNSF Ry.

Co.*, 608 F.3d 364, 367 (8th Cir. 2010) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486

U.S. 399, 413 (1988)) (discussing RLA preemption of state-law claims). Arbitration is

mandatory if the CBA is the "only source" of the right asserted, *Norris*, 512 U.S. at 257-

58 (quoting *Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 324 (1972)), and if the

dispute "may be conclusively resolved by interpreting the existing CBA," *id.* at 256

(quoting *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 305 (1989))

(alterations omitted).

By contrast, if a claim seeks to "enforce rights that are independent of the CBA,"

then the RLA does not apply and the courts have jurisdiction. *Evermann*, 608 F.3d at 367

(quoting *Norris*, 512 U.S. at 256). "The bare fact that a [CBA] will be consulted . . .

plainly does not require the claim to be extinguished." *Id.* (quoting *Norris*, 512 U.S.

at 261 n.8) (alterations omitted). Moreover, "purely factual questions about an employee's conduct or an employer's conduct and motives do not require a court to interpret any term of a [CBA]." *Taggart v. Trans World Airlines, Inc.*, 40 F.3d 269, 273 (8th Cir. 1994) (quoting *Norris*, 512 U.S. at 261) (internal quotation marks and alterations omitted).

Here, the Court lacks jurisdiction over four of Brisbois's claims because they are dependent on the CBA and thus subject to mandatory arbitration under the RLA. These include Brisbois's claims involving (1) the denial of several assistant-foreman and related positions, (2) the denial of pay and mileage reimbursements for attending the disciplinary hearing, (3) the denial of meal and other reimbursements, and (4) the continued denial of assistant-foreman and related positions. To know whether CP retaliated against Brisbois by denying these reimbursements and positions, the Court would have to determine whether Brisbois was *entitled* to these reimbursements and positions; obviously, an employer does not violate the FRSA by denying an employee something to which she had no right in the first place. And the only source of any entitlement to these reimbursements and positions would be the CBA. Brisbois has not identified anything outside of the CBA that would give her the right to be paid for time at a disciplinary hearing, or to be reimbursed for mileage for attending a disciplinary hearing, or to be reimbursed for meals or other work-related expenses, or to be selected

to fill openings for particular assistant-foreman positions. It would thus be impossible for the Court to adjudicate Brisbois's claims without interpreting the provisions of the CBA—provisions that, according to Brisbois, entitled her to these reimbursements and positions and that, according to CP, created no such entitlement. *See Evermann*, 608 F.3d at 367 (holding that a claim for reimbursement under a state law prohibiting employers from withholding pay "by reason of jury duty" was preempted by the RLA because "not only the existence but also the scope of the entitlement depends on the [CBA]" (quoting *Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 315 (7th Cir. 2002) (alterations omitted)); *see also Schiltz v. Burlington N. R.R.*, 115 F.3d 1407, 1415 (8th Cir. 1997) (holding that a claim involving the location of seniority rights was "inextricably intertwined with the language contained in the CBA" and was preempted by the RLA).

The remaining four claims in Brisbois's complaint appear to be independent of the CBA and thus not subject to mandatory arbitration under the RLA. These include the claims involving Brisbois's five-day suspension and one-year seniority restriction, the damage to her car, the refusal to let her return to work for three days in April 2013, and the additional allegations of rule violations. To resolve these retaliation claims, the Court will primarily address "purely factual questions" about Brisbois's conduct and CP's motivations. *Taggart*, 40 F.3d at 273. Essentially, the Court will have to determine what Brisbois did and why CP suspended her, restricted her seniority, (allegedly)

damaged her car, refused to let her return to work in April 2013, and accused her of

additional rule violations. *See Kuduk v. BNSF Ry. Co.*, 768 F.3d 786, 791 (8th Cir. 2014)

(discussing the "contributing factor" element of a prima facie case of retaliation under

the FRSA). In the course of making these determinations, the Court may have to

consult the CBA; after all, in a unionized workplace, just about everything is covered by

a CBA. But it does not appear that the Court will be called upon to interpret any

contested provision of the CBA. Moreover, the CBA is not the source (or at least not the

only source) of Brisbois's right not to have her car damaged or to be suspended,

restricted, barred from work, or accused of rule violations in retaliation for engaging in

conduct protected by the FRSA. *See Taggart*, 40 F.3d at 274 ("Nor do we think that

resolution of [employee's] state law [handicap discrimination] claim requires a

determination whether the termination was justified by the [CBA].").

## C. Timeliness

The FRSA requires an employee alleging retaliation to file a complaint with

OSHA within 180 days of the employer's alleged retaliatory act. 49 U.S.C.

§ 20109(d)(2)(A)(ii). CP argues that Brisbois's claims are time-barred because her

written complaint (which Brisbois labeled as an "Amended Complaint") was not filed

until April 15, 2013, which was after the 180-day limit expired. Brisbois disagrees and

contends that she filed a complaint with OSHA by phone on January 11, 2013, which

was within the 180-day limitations period. *See* Compl. ¶ 27.

There is no dispute that Brisbois contacted OSHA by phone on January 11, 2013

to complain about alleged retaliation by CP. CP insists, though, that Brisbois's phone

call does not qualify as a filed complaint because OSHA mistakenly told her that her

complaint was untimely, mistakenly believed that she no longer wanted to pursue the

complaint, and mistakenly failed to reduce Brisbois's complaint to writing as required

by 29 C.F.R. § 1982.103(b) ("Oral complaints will be reduced to writing by OSHA.").[3]

This hardly seems fair—and it is not the law. The governing regulations are clear

that complaints may be filed with OSHA over the phone. *See* 29 C.F.R. § 1982.103(b).

When an employee files an oral complaint, "[t]he date of the . . . telephone call . . . will

be considered the date of filing." 29 C.F.R. § 1982.103(d). Brisbois's oral complaint on

January 11, 2013, was within 180 days of the earliest alleged act of retaliation (the five-

day suspension and one-year seniority restriction imposed on August 30, 2012).[4] The

_____

[3]An administrative tangle then ensued: OSHA sent a letter to Brisbois
summarizing its (mistaken) conclusions from the phone conversation; Brisbois appealed
the letter to the ALJ and requested a hearing; the ALJ dismissed her appeal without
prejudice because OSHA had not conducted an investigation (because it had mistakenly
concluded that Brisbois did not want to pursue her complaint); and OSHA finally
treated Brisbois's initial phone call as the date of filing and conducted an investigation,
which resulted in a finding that CP had not retaliated against Brisbois.

[4]The 180-day limitation runs from the date of CP's allegedly retaliatory act—i.e.,
(continued...)

-12-

fact that OSHA may have violated its own regulations by not reducing Brisbois's complaint to writing does not change the fact that Brisbois filed a complaint on January 11, 2013. Her complaint was timely.

## D. Exhaustion

The FRSA requires that, before an employee can sue her employer for a violation of the FRSA, the employee must exhaust her administrative remedies by filing a complaint with OSHA. *See* 49 U.S.C. § 20109(d). The purpose of this exhaustion requirement is to give OSHA the first opportunity to investigate and resolve the claim. *See Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005) (discussing the purpose of exhausting discrimination claims under the Age Discrimination in Employment Act).

Separate and distinct incidents of retaliation that were not alleged in an administrative complaint are not deemed to be exhausted, *see Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 673 (8th Cir. 1994); however, "[t]he exhaustion requirement may be satisfied if the civil claim grows out of or is like or reasonably related to the substance of the allegations in the administrative charge," *Fanning v. Potter*, 614 F.3d 845, 851-52 (8th Cir. 2010) (internal quotation marks and citation omitted). *Compare Parisi*, 400 F.3d

---

[4](...continued)
the date it violated the FRSA. *See* 29 C.F.R. § 1982.103(d) (explaining that the time for filing a complaint is "[w]ithin 180 days after an alleged *violation of . . . FRSA*" (emphasis added)). Here, the date of the earliest alleged violation of the FRSA is the date that Brisbois was suspended and her seniority restricted—not the date that Brisbois engaged in protected activity, as CP appears to argue. *See* Def.'s Br. 20.

at 586 (holding that new refusal-to-rehire claims were "discrete employment actions" not reasonably related to the refusal-to-rehire claims in the administrative complaint), *and Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222-23 (8th Cir. 1994) (holding that a race-discrimination claim was not reasonably related to the "highly specific" administrative complaint of retaliation), *with Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 673-74 (8th Cir. 2006) (holding that later claims of retaliation were reasonably related to the administrative complaint alleging "ongoing and continuing" retaliation). Although "administrative complaints are interpreted liberally," *Tart*, 31 F.3d at 671, the scope of a court action "can be only as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination," *Fanning*, 614 F.3d at 852 (internal quotation marks and citation omitted).

CP argues that three of Brisbois's claims must be dismissed because she failed to exhaust her administrative remedies by first presenting these claims to OSHA. These include Brisbois's claims for: (1) the denial of "other reimbursements," (2) the denial of several assistant-foreman and related positions, and (3) the continued denial of assistant-foreman and related positions.[5] The Court agrees that, because these claims

---

[5] The Court has already held that it does not have jurisdiction over these claims because they are subject to mandatory arbitration under the RLA. For the sake of completeness, however, the Court will also address Brisbois's failure to exhaust her

(continued...)

were not included in Brisbois's administrative complaint and are not "reasonably related" to the claims that were included in that complaint, Brisbois failed to exhaust her administrative remedies.

Brisbois's administrative complaint detailed discrete and highly specific incidents of alleged retaliation. For example, she alleged that "[o]n or about September 17, 2012," she was informed that "she would be paid for straight time for attending the August 17, 2012 disciplinary hearing, instead of the normal overtime," and that "she would not receive the normal compensation for her mileage to attend the hearing." Am. Compl. ¶ 6. She also alleged that "[o]n or about April 5, 2013," she was denied "a per diem meal allow[an]ce of $25.75." *Id.* ¶ 11. There is no hint in Brisbois's administrative complaint that she is accusing CP of retaliating against her by denying her any assistant-foreman or related position, and thus an OSHA investigator would have had no reason to look into that matter. *See Fanning*, 614 F.3d at 852.

Brisbois argues that her new claims are not new, but rather present "more particularized details and allegations." Pl.'s Resp. 23. The Court disagrees. Brisbois's claim in this lawsuit for "other reimbursements" is *less*, not *more*, "particularized" than the very specific claims for pay, meal, and mileage reimbursements listed in her administrative complaint. And, as just noted, Brisbois's administrative complaint said

---

[5](...continued)
administrative remedies.

nothing about being denied an assistant-foreman or related position in retaliation for her protected conduct; when she made that allegation in this lawsuit, she was making a new allegation, not a more particularized allegation. *See Parisi*, 400 F.3d at 586 ("[I]t is not reasonable to expect the EEOC to look for and investigate such [discrete] adverse employment actions if they are nowhere mentioned in the administrative charge.").

Brisbois points out that her administrative complaint did accuse CP of retaliating against her in August 2012 when it restricted her seniority as a foreman for one year. *See* Compl. ¶ 23. That is true, and to the extent that Brisbois is complaining in this lawsuit about losing "assistant foreman and related positions" *because* of the one-year restriction on her seniority, she has exhausted her administrative remedies. But the Court understands Brisbois to be alleging that, during the year that her seniority was restricted, CP denied her *assistant*-foreman positions to which she was entitled despite having her seniority as a *foreman* restricted—and to be further alleging that CP continued to deny her assistant-foreman and related positions after the restriction on her seniority had *ended*. *See id*. ¶ 24 ("Subsequently, Defendant denied Plaintiff several assistant foreman and related positions that she was qualified for, *even after her seniority restriction ended*." (emphasis added)). Brisbois did not reasonably put OSHA (or CP) on notice that Brisbois was accusing CP of retaliating by denying her these positions; indeed, at the time that she filed her complaints (in January and April 2013), she was

still on restriction, and thus she could not possibly have included in her complaints any claim about the post-restriction denial of positions.

In sum, Brisbois failed to exhaust her claims that CP retaliated against her by denying "other reimbursements," by denying several assistant-foreman and related positions, and by continuing to deny assistant-foreman and related positions. If these claims had not already been dismissed for lack of jurisdiction, the Court would dismiss them for failure to exhaust administrative remedies.

*E. Failure to State a Claim*

To this point, the Court has dismissed three of Brisbois's claims—her claims regarding the denial of "other reimbursements," the denial of assistant-foreman and related positions, and the continued denial of assistant-foreman and related positions— both because those claims must be arbitrated under the RLA and because Brisbois failed to exhaust her administrative remedies. The Court has dismissed another of Brisbois's claims—her claim regarding the denial of pay, mileage, and meal reimbursements— because that claim must be arbitrated under the RLA. That leaves four claims: Brisbois's claims regarding (1) the five-day suspension and one-year restriction of seniority rights; (2) the damage to her car; (3) the refusal to allow her to return to work for three days in April 2013; and (4) the additional allegations of rule violations and

subsequent disciplinary hearing.  CP argues that Brisbois has not sufficiently pleaded a prima facie case of retaliation as to the latter three claims.

To establish a prima facie case of retaliation under the FRSA, Brisbois must show: (1) that she engaged in protected activity; (2) that CP knew that she had engaged in protected activity; (3) that she suffered an adverse employment action; and (4) that "the circumstances raise an inference that the protected activity was a contributing factor in the adverse action."  *Kuduk v. BNSF Ry. Co.*, 768 F.3d 786, 789 (8th Cir. 2014).

Brisbois claims that CP retaliated against her when it damaged her car.  Brisbois alleges that her "car was damaged . . . in a parking area with limited access and no real reason for non-railroad employees to be."  Compl. ¶ 26.  She alleges that "[u]pon information and belief, agents acting on behalf of [CP] caused the damage to [her] car."  *Id.* ¶ 26; *see also id.* ¶ 44.  These allegations are sufficient—if barely—to plausibly plead a claim of retaliation under the FRSA and to give CP fair notice of the claim against it.  *See Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a probability requirement . . . ." (internal quotation marks omitted)); *Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." (internal quotation marks omitted)).[6]

--------

[6]CP relies on documents that were neither attached to nor necessarily embraced

(continued...)

The same is true for Brisbois's claim that CP retaliated against her when it refused to allow her to return to work for three days in April 2013. Brisbois alleges that in retaliation for her contacting OSHA in January 2013, CP "refused to permit [her] to return to work on April 2 through April 4, 2013, despite that [she] had medical clearance to return from a brief absence." Compl. ¶ 28; *see also id.* ¶ 46. Again, Brisbois has plausibly alleged a prima facie case of retaliation and given CP fair notice of the claim against it.[7]

---

[6](...continued)
by the complaint—such as a police report—and argues, in essence, that in light of these documents it is not "plausible" to believe that CP had anything to do with the damage to Brisbois's car. But the Court may not consider "matters outside the pleadings," unless it wants to treat CP's motion to dismiss under Rule 12(b)(6) as a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d).

The Court does not want to treat CP's motion as a summary-judgment motion—nor, as a general matter, does the Court want to hear summary-judgment motions until discovery has closed. Although it is true that "documents 'necessarily embraced by the complaint' are not matters outside the pleading," *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004), there is a difference between a document being *relevant* to an allegation in a complaint and a document being *necessarily embraced* by a complaint. The documents relied on by CP fall into the former category.

[7]CP does not seriously argue otherwise, but again relies on documents that were neither attached to nor necessarily embraced by the complaint and argues that in light of these documents, Brisbois's claim is not "plausible." The Court reminds CP that *Twombly* and *Iqbal* focus on the allegations in the complaint and ask whether, on their face, those allegations make out a plausible claim. *Twombly* and *Iqbal* should not be used as an excuse to bring two rounds of summary-judgment motions—one de facto, one de jure—in every case.

Finally, Brisbois claims that CP retaliated against her when it "subjected [her] to additional allegations of rule violations, and conducted an investigation related to the additional allegations." Compl. ¶¶ 29, 46. Brisbois was not actually disciplined in connection with these alleged violations. *See* Pl.'s Resp. 26. She argues, though, that merely being *accused* of violating workplace rules—and having to address those accusations at a disciplinary hearing—is an "adverse employment action" for purposes of the FRSA. This is by no means a frivolous argument, but ultimately the Court disagrees.

The FRSA provides that "[a] railroad carrier . . . shall not discharge, demote, suspend, reprimand, or in any other way discriminate against, including but not limited to intimidating, threatening, restraining, coercing, blacklisting, or disciplining an employee for [engaging in protected conduct]." 29 C.F.R. § 1982.102(b)(2)(i). The courts characterize these as "adverse employment actions"—the same term used in retaliation cases brought under Title VII and other federal statutes. *See, e.g., AuBuchon v. Geithner*, 743 F.3d 638, 641 (8th Cir. 2014) ("To prove a prima facie case of unlawful retaliation [under Title VII] employees must demonstrate that . . . the employer took adverse employment action against them . . . .").

Under the anti-retaliation provisions of Title VII, an "adverse employment action" is "action that 'might have dissuaded a reasonable worker from [engaging in

protected activity under Title VII].'" *AuBuchon*, 743 F.3d at 643-44 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *see also Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 173 (2011) (". . . Title VII's antiretaliation provision must be construed to cover a broad range of employer conduct."). Under this standard, the adverse employment action must be "material, not trivial" and "the retaliation must produce some injury or harm." *AuBuchon*, 743 F.3d at 644 (internal quotation marks omitted) (holding that there was no adverse action where the employee's supervisor made "reckless allegations of sexual harassment" against the employee, but the employee was never threatened or disciplined). *But see, e.g., Doucet v. Univ. of Cincinnati*, No. 1:05CV148, 2006 WL 2044955, at *22 n.19 (S.D. Ohio July 19, 2006) ("The initiation of a formal disciplinary investigation—even one that does not result in formal discipline—would satisfy this standard [from *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)]."), *aff'd*, No. 06-4118, 2007 WL 2445993 (6th Cir. Aug. 28, 2007) (unpublished).

Brisbois argues that a broader range of negative consequences should qualify as adverse employment actions under the FRSA than under Title VII because, as a general matter, the FRSA "provides greater employee protection and, thus, prohibits more employer conduct than Title VII."[8] Pl.'s Resp. 26. But Brisbois has not explained what

[8]For example, the FRSA requires that protected activity merely be a "contributing (continued...)

this less demanding standard is (or should be), nor has she cited any case in which an employer was found liable for retaliation under the FRSA for taking an action that would *not* have "dissuaded a reasonable worker from [engaging in protected activity]." *AuBuchon*, 743 F.3d at 643-44.

Brisbois points to two district-court cases in support of her argument that an employee has suffered an adverse employment action when she has been accused of violating a rule, even if she is later exonerated in a disciplinary hearing. But these cases are distinguishable. The first case, *Blackorby v. BNSF Railway Company*, No. 13-CV-00908, 2015 WL 58601 (W.D. Mo. Jan. 5, 2015), denied summary judgment for the rail carrier where the employee was investigated and suffered a "30 day record suspension and . . . loss in pay for time spent in the investigation hearing." *Id.* at *3. Here, Brisbois was not disciplined, and there are no allegations that she lost pay—or anything else—due to the investigation. Second, the court in *Almendarez v. BNSF Railway Company*, No. C13-0086, 2014 WL 931530 (W.D. Wash. Mar. 10, 2014), denied summary judgment for the employees where the employees—a "gang" assigned to work on a construction project—alleged that the carrier had explicitly threatened that "the gang

---

[8](...continued)
factor" to the adverse employment action, whereas Title VII requires a "causal connection" between the protected activity and the adverse employment action. *See Kuduk*, 768 F.3d at 791 (noting that the "contributing factor" causation standard under the FRSA is more lenient).

would be abolished" if any additional injuries to gang members were reported, though nothing resulted from the threat. *Id.* at *1, 5-6. The Court is not certain that *Almendarez* was correctly decided, but, in any event, Brisbois did not experience the kind of explicit threat that was at issue in *Almendarez*. True, any investigation of a suspected rule violation carries an implicit threat that, if the employee is found to have violated the rule, she might be disciplined. But that is a far cry from the rail carrier explicitly warning an employee that, if she engages in protected activity, the rail carrier will, in fact, take action against her.

To hold that a rail worker suffers an adverse employment action any time a rail carrier attempts to determine whether she has violated a rule—typically by following an investigatory process mandated under a CBA—would have major implications for labor relations in the rail industry. In the absence of persuasive authority suggesting that an employee who has *not* been disciplined can nevertheless recover for retaliation under the FRSA because she was *accused* of violating a workplace rule, the Court is unwilling to stretch the FRSA so far. The Court therefore dismisses Brisbois's claim that CP retaliated against her by accusing her—and later exonerating her—of additional rule violations.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT defendant's motion to dismiss [ECF No. 10] is

GRANTED IN PART AND DENIED IN PART as follows:

1.      Defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(1) is GRANTED

    as to plaintiff's claims for:

    a.      the denial of several assistant-foreman and related positions;

    b.      the denial of pay and mileage reimbursements;

    c.      the denial of meal and other reimbursements; and

    d.      the continued denial of assistant-foreman and related positions.

    Those claims are DISMISSED WITHOUT PREJUDICE.

2.      Defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6) is GRANTED

    as to plaintiff's claim for the additional allegations of rule violations and

    subsequent disciplinary hearing.  That claim is DISMISSED WITH

    PREJUDICE AND ON THE MERITS.

2.      Defendant's motion to dismiss is DENIED as to plaintiff's claims for:

    a.      the five-day suspension and one-year seniority restriction;

    b.      the damage to plaintiff's car; and

   c.  the refusal to allow plaintiff to return to work for three days in

     April 2013.


Dated: August 21, 2015        s/Patrick J. Schiltz_____
               Patrick J. Schiltz
               United States District Judge